1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
In re:                            :
                                       Docket #14cv8105
  ZVONKO, et al.,                 : 1:14-cv-08105-PAC

                  Plaintiffs,     :

   - against -                    :

  ELI'S BREAD, INC., et al.,      :
                                       New York, New York
                  Defendants.     : May 11, 2016

------------------------------------ :
```

PROCEEDINGS BEFORE
THE HONORABLE PAUL A. CROTTY
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiffs:         LAW OFFICES OF VINCENT BAUER
                            BY:  VINCENT BAUER, ESQ.
                            112 Madison Avenue, 5th Floor
                            New York, NY  10016

For Defendants:             DENTONS US LLP
                            BY:  RICHARD SCHARLAT, ESQ.
                                 NEIL CAPOBIANCO, ESQ.
                            1221 Avenue of the Americas
                            New York, NY  10020

Transcription Service: Carole Ludwig, *Transcription Services*
                       141 East Third Street #3E
                       New York, New York 10009
                       Phone:  (212) 420-0771
                       Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

<u>**INDEX**</u>

<u>**E X A M I N A T I O N S**</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | <u>Re-Direct</u> | <u>Re-Cross</u> | <u>Court</u> |
|---|---|---|---|---|---|
| None | | | | | |

<u>**E X H I B I T S**</u>

| <u>Exhibit Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | <u>Voir Dire</u> |
|---|---|---|---|---|
| None | | | | |

```
                                                             3
 1

 2              THE CLERK:  Your Honor, this is the matter of

 3    Zvonko, et al., versus Eli's Bread, Inc., et al, docket

 4    14cv8105.  Counsel for plaintiffs, please state your

 5    appearance.

 6              MR. VINCENT BAUER:  Vincent Bauer on behalf of the

 7    plaintiffs, good afternoon, Your Honor.

 8              THE COURT:  Mr. Bauer.

 9              THE CLERK:  For defendants.

10              MR. RICHARD SCHARLAT:  Richard Scharlat and Neil

11    Capobianco of Dentons for defendants.

12              THE COURT:  Gentlemen.

13              MR. SCHARLAT:  Good afternoon, Your Honor.

14              THE COURT:  Thank you for coming.  Okay, Mr.

15    Bauer, the last I heard we were supposed to have a

16    conference on an open discovery issue which the parties, by

17    working together, were able to resolve, and you asked that

18    we schedule an appearance after May 9th, so today's May 11th,

19    what's up?

20              MR. BAUER:  Thank you, Your Honor.  Well, I

21    thought we, well we have made some progress with respect to

22    some of the open issues and I believe that opposing counsel

23    and I will continue in that vein.  We do have an issue that

24    I just learned this morning that is going to require the

25    Court's attention, and the issue, if I may, is this, and
```

4

1  quickly by way of background.  The plaintiffs in this care

2  are 17 delivery drivers for defendant, Eli's Bread.

3  Essentially the only issue in the case is how long the

4  routes that they drove took, because while there was a punch

5  clock, there was no requirement that they punch in and punch

6  out, and so there were no punch records for many of the

7  records, there are some scant records with respect to

8  others, and at least one or two of the plaintiffs pretty

9  frequently, although not consistently, punched in and

10  punched out. And so the open issue relates to those facts.

11         There was an issue with respect to the defendants

12  originally objected to producing the route, the punch

13  records with respect to all the plaintiffs, they've now done

14  that. I got those records yesterday.  I thought we had an

15  agreement whereby counsel was also going to produce to me

16  this week the records with respect to non-plaintiff delivery

17  drivers and the rationale in that regard, Your Honor, is as

18  follows.  For most of my clients there are no punch records,

19  whatsoever, and so my understanding is that defendants would

20  like to use punch records with respect to one or more of the

21  plaintiffs to suggest to the Court that that's the amount of

22  time that the route driven by another plaintiff who had the

23  same route would, you know, that's how long it should take.

24         THE COURT:  Another plaintiff or another party,

another person?

        MR. BAUER:  Another plaintiff driver.

        THE COURT:  Okay.

        MR. BAUER:  So they're saying well we can use, for example, plaintiff Jensey Jorge's punch records for this route against plaintiff Zoric Zvonko, even though he doesn't have punch records, we're going to make the assumption that these two gentlemen should have taken the same amount of time on average to drive the same route.  Now I don't believe that's the case, I think they're going to have a significant problem in terms of admissibility trying to establish how long somebody worked based on how long somebody else worked, but that's an issue for trial, I would suspect.

        With respect to discovery, my position is this.  Well, if that's the case, if you're allowed to use or you intend to use records with respect to plaintiff Jorge, you know, to demonstrate something as it relates to other plaintiffs, then I should at least have the opportunity to review the documents that show how long the non-plaintiff drivers took to drive similar routes.  Now I understand that they're not going to complete records, for some of those individuals I'm going to get a bunch of pages, just as is the case with respect to the plaintiff records, where it

1
2  will show unscheduled, meaning they didn't punch in or out,
3  or it will show time when they punched in but now time that
4  they punched out.  And so what I'm looking for are the
5  records with respect to drivers, non-plaintiffs, that
6  consistently punched in or out, or on some days punched in
7  or out. And I know that's the case, well at least my clients
8  inform me that that's the case. In terms of the non-
9  plaintiffs, there were some of those guys who would punch in
10 and punch out on a regular basis.

11      And so that's the discovery I'm looking for. We
12 had a deal that I would be getting that and I learned this
13 morning that that's not the case, that the defendants would
14 rather go in a different direction, they thought that they
15 alternative proposal that I had made was that if they don't
16 give over the records as it relates to the non-plaintiffs,
17 then they wouldn't be able to use those in connection with
18 the case to demonstrate how long one of the plaintiffs or
19 several of the plaintiffs should have taken or did take with
20 respect to these routes.

21      My proposal was this, if it is, if I'm not going
22 to get the non-plaintiff driver records, then I'm at a
23 disadvantage and the way to level the playing field in that
24 regard is for no one to be able to use the records, the
25 punch records of a driver essentially against any other

driver, you know, because it's no more relevant or probative

how long it took Jensey Jorge to drive a particular route

than a non-plaintiff driver who punched in and punched out.

We should be able to see, my understanding is that Jensey

Jorge was the fastest of the drivers, he got his route done

more quickly than others, family man, zip, zip, zip, zip,

zip, and got things done, and, you know, so the records for

him might be misleading.  So I think I'm entitled to the

records for the non-plaintiff drivers that show whatever

they show about when they punched in and punched out, how

long those routes should take.  And alternatively, there

should be an agreement, and I thought that was clearly what

I was proposing, that, you know, those punch records can be

used for Jensey Jorge, certainly, but should not be able to

be used for Zoric Zvonko or anyone else because that allows

them to cherry pick.

       THE COURT:  Okay, so what's the issue?  The issue

is the defendants won't say yes to you?

       MR. BAUER:  Say it again?

       THE COURT:  The issue is the defendants won't say

yes to your proposal?

       MR. BAUER:  Right.

       THE COURT:  Okay.

       MR. BAUER:  What they're saying now is we thought

1

2 you had a different proposal which was we just won't

3 introduce any non-plaintiff driver records, I said, no, no,

4 no, that's not what I offered, and so now we don't have a

5 deal, and six weeks has passed and now I don't have these

6 non-plaintiff records.  Counsel did make a good point in our

7 call this morning which is that, you know, we can start the

8 depositions without those non-plaintiff driver records, to

9 the extent that if they want to use a non-plaintiff driver's

10 punch records in a deposition I just need those in advance a

11 couple of days so I can prep the witness having the benefit

12 of those documents.

13          THE COURT:  What did the defendants have to say?

14          MR. SCHARLAT:  Your Honor, as to the non-

15 plaintiffs, I want to apologize and I apologize to Mr.

16 Bauer, there was a miscommunication, we were still learning

17 how to deal with our client and who the decision maker was.

18 I think that the deal, as we understood it, makes some

19 sense, and I'm working to get my client to agree to it,

20 because I'm focused really in all of this on rule one, Your

21 Honor, that we do this in the fastest, most expedient and

22 most inexpensive way.  We produced 2,500 pages of punch

23 records so he has the complete universe of plaintiffs'

24 documents. To get into the non-plaintiffs' documents will be

25 another burden. So what I understood the deal to be, Judge,

1
2  and I think it made sense, is that if we don't produce the

3  non-plaintiff records, whatever value they are, and

4  respectfully, I don't know if Mr. Bauer can really make an

5  evaluation if he, in fact, doesn't have everything he needs

6  already because he's got the punch records of the plaintiffs

7  which he got yesterday which was timely. So put that aside

8  for a second.

9          The non-plaintiff records may or may not be

10  useful, but if we choose not to produce them, we're

11  obviously prepared to say that we wouldn't introduce them as

12  part of our case.

13          THE COURT:  You couldn't introduce them.

14          MR. SCHARLAT:  Okay, so I agree that's ice in the

15  winter. But what I'm not prepared to say, Judge, is that,

16  therefore, I can't cross-pollinate, so to speak, between

17  plaintiffs on records that have been produced.

18          THE COURT:  Listen, how are the drivers

19  compensated?

20          MR. SCHARLAT:  They're compensated on a daily

21  rate.

22          THE COURT:  A daily rate of what, per hour or per

23  mile or --

24          MR. SCHARLAT:  Per day.

25          MR. BAUER:  Per day.

1                                                                  10

2             THE COURT:  And they have all day or as much of

3  the day as they'll take to, I mean is it, let's do this

4  simply.

5             MR. SCHARLAT:  Sure.

6             THE COURT:  The route goes from, has 10 stops and

7  he gets $100, and however long that route takes he still

8  gets $100?

9             MR. SCHARLAT:  Right.

10             THE COURT:  So if he does it in 2 hours he's

11  making $50 an hour?

12             MR. SCHARLAT:  Right.

13             THE COURT:  If he does it in 4 hours he's making

14  $25 an hour, if it takes him 8 hours he's making $12 an

15  hour, is that it?

16             MR. SCHARLAT:  Right. I think that --

17             THE COURT:  I used to unload boxcars that way when

18  I was going to college, you know, they'd have a boxcar fee,

19  it didn't make any difference how long it took, you got

20  paid, you and your crew got paid X amount of money for

21  unloading a boxcar.

22             MR. SCHARLAT:  So that's a good analogy, I think

23  the difference here might be that, and we have other records

24  which we're talking about producing, which show that it

25  really can't be done, except within some range, because you

1                                                          11

2  have, and these are inventory registers that Mr. Bauer just

3  asked for in April, he sent us a third document request on

4  April 21st, the way, you can think about the way bread is

5  delivered.  Early in the morning you've got to get there and

6  you have a certain amount of stops, and restaurants have to

7  have their food at a certain time, and you have to complete

8  your deliveries within a certain amount of time otherwise

9  they're not going to accept it or there's going to be

10  problems and lots of complaints.  So it's not so wide as to

11  say he could finish it in two hours, it would be virtually

12  impossible based on the way they structure these things and

13  we have records that say that. But the question is did he

14  finish it in six hours or eight hours, that's sort of the

15  range you're talking about for most of the routes.

16          So we have other records besides the punch records

17  which we're now talking about with Mr. Bauer about doing

18  samples for, again, because of the burdens --

19          THE COURT:  And what would those other records be?

20          MR. SCHARLAT:  Those records would be GPS records.

21          THE COURT:  Oh.

22          MR. SCHARLAT:  Okay, which we have some of, there

23  were two systems.

24          THE COURT:  Would it be restaurant orders that

25  said delivery must be made by 10:00?

1

2      MR. SCHARLAT:  Well that's an inventory register,

3  Your Honor.

4      THE COURT:  Okay.

5      MR. SCHARLAT:  Basically a driver would get a

6  printout of everywhere they had to be and when they had to

7  be there on that day on that route.  So if you had to stop

8  at, you know, make up a restaurant, you know, you had to be

9  there by 6:00, if you weren't there by 6:15 you had a

10  problem, or if you got there too early, they weren't open,

11  you would sit there.  So those provide some real rationale,

12  some real common sense indication of how long these things

13  would take.

14      Now, I would just say to preclude us from using,

15  Mr. Bauer keeps referring to Jensey Jorge so I'm just doing

16  that for an example, if we have good records from one driver

17  about how long a particular route too, who's a plaintiff,

18  and we've produced all those records, and there's another

19  plaintiff who ran that route on certain days, those records

20  would be probative, I think very probative, but certainly

21  probative as to how long that route took for the other

22  driver, subject to cross examination, subject to other

23  evidence.  So if I don't produce certain non-plaintiff

24  records, I get it, but if I produced a universe of records,

25  I should be able to use that universe of records for and

1

2  against any drive that it makes sense that it's probative.

3  So that I can never agree to.

4       THE COURT:  So you're still talking with one

5  another, I mean it's like trying to mediate a dispute that's

6  still ongoing.

7       MR. SCHARLAT:  I think, Your Honor, if I may, I

8  think the most important thing Mr. Bauer said today and that

9  is what we do agree on, is I think we can move forward with

10 some depositions. And I'm very -- look, I came in as a

11 second lawyer here, I'm mindful of the fact -- third?  See,

12 there's more discovery every day, Judge, now I'm the third

13 lawyer.  So, you know, I'm trying to really be mindful and

14 respect the Court's scheduling order, coming in here from

15 day one saying I think we can do this. We've produced a lot

16 of documents that frankly should have been produced before,

17 they're not produced.  We're trying to move forward.  So

18 nothing, and this was said in the call today, nothing that's

19 happened so far, I haven't missed any dates, I can produce

20 the non-plaintiffs by May 13th still and be within the

21 agreement, but, you know, we're going to have to work that

22 out and I don't think my client's going to agree to that.

23       But we're prepared to move forward, as Mr. Bauer

24 said, on a commonsense, good faith basis, if we're going to

25 show somebody something, give them a heads up, nothing by

14

1

2  ambush, okay?  But we have a problem with the availability

3  of one witness that I want to raise to the Court, we would

4  like to start with a man named Milan who was a manager of

5  the routes who we believe a lot of plaintiffs' information

6  about what routes were and how long the routes were, he

7  apparently, according to Mr. Bauer's information, and I

8  understand Mr. Bauer's having trouble getting information,

9  he's in Serbia, Belgrade, I messed up the countries, he's

10  ill, he's recuperating, he may not be available. They're

11  hoping he'll be able to come for trial, those are the kinds

12  of things that set bells off in my head. I have no affidavit

13  from him, I have no statement from him, I can't have a

14  September surprise if this trial is going to be in

15  September.  He's the person we would want to depose first,

16  so, you know, that's an issues for me, you know.

17          THE COURT:  What can I do about that?

18          MR. BAUER:  Your Honor --

19          THE COURT:  Excuse me, Mr. Bauer.

20          MR. SCHARLAT:  I'm sorry, I just wanted to bring

21  it to the Court's attention that this is part of the

22  discussions we're having and it, you know, it may be an

23  issue that arises. I thought it was important not to let

24  that go to the last minute, Your Honor.

25          THE COURT:  All right.  Yeah, Mr. Bauer.

1                                                      15

2              MR. BAUER:  If I may, Your Honor.  Milan Ratijac

3    (phonetic) is their witness, he was their employee for many,

4    many years, he presided, he was the route supervisor and he

5    presided over all the drivers.  He retired because he's

6    quite ill, he has cancer, and he would not voluntarily give

7    us an affidavit or show up for a deposition, so I subpoenaed

8    him, it took some time and effort, got him subpoenaed and on

9    two occasions he called me right before the deposition date

10   and said I'm physically unable to testify. My information

11   around that time was that he was physically unable to

12   testify so I didn't make a motion to compel his deposition

13   or what have you.

14              THE COURT:  Was his deposition going to be in

15   Europe or going to be here?

16              MR. BAUER:  No, he was here.

17              THE COURT:  Oh, he was here.

18              MR. BAUER:  He was in New Jersey, we were going to

19   try to do it over in Ft. Lee because he was sick enough that

20   we thought maybe we could have a conference room down the

21   block from his house and not require him to travel.  We made

22   great efforts to try to put this together but his illness

23   prevented him from testifying.

24              THE COURT:  And he is now overseas?

25              MR. BAUER:  My information, and, you know, I'm a

16

little reluctant to make representations because I'll hear

things. A client will say, hey, I heard this, or I heard

that, you know, and I don't know, he does not speak to me, I

can't pick up the cell phone and call him on his cell phone

and expect him to pick up, that's not the relationship.

Again, he's their former employee, he's just a guy I

subpoenaed.

THE COURT:  Okay.

MR. BAUER:  I'd love to --

THE COURT:  Tell me again why information from

non-plaintiffs is relevant to --

MR. BAUER:  Oh, oh, back to the issue of the non-

plaintiff drivers?

THE COURT:  Yeah, right.

MR. BAUER:  Mr. Scharlat made the exact point,

what he said with respect to Jensey Jorge is how long it

took him to drive the route is probative of how long it

would take another plaintiff who drove that same route to

drive the route.  Same logic, well, if John Non-Plaintiff

has punch records that show how long it took him to do a

given route, that would be probative of long it took one of

the plaintiffs who drove the same route to drive that route.

Now it's important to get the non-plaintiff

records because we have pretty good records for Jensey

17

Jorge, he only drove some of the routes, there are many routes that he had no involvement in so we have no ability to glean from Mr. Jorge's route --

THE COURT:  So if I were to look at this from the standpoint of routes at issue, and not every route is at issue, right?

MR. BAUER:  Well, the routes at issue --

THE COURT:  We'd want all the drivers --

MR. BAUER:  The routes driven by any of the 17 drivers during the 6 year period.

THE COURT:  Okay, so it's a defined number of routes, 17 drivers, or 17 routes and how many --

MR. BAUER:  Right, and then the routes switch and what have you, but we had a list, I want to say it was approximately 20 routes all in.

THE COURT:  And you want to, by route, the punch records or whatever records exist as to the drivers who delivered on that route --

MR. BAUER:  Yes.

THE COURT:  Regardless of whether their plaintiffs or not for plaintiffs, or whether they're plaintiff or non-plaintiff.

MR. BAUER:  Exactly.

THE COURT:  All right.  Okay.  And Mr. Scharlat,

1

2 what's the objection to that?

3          MR. SCHARLAT:  The objection to that --

4          THE COURT:  So you're trying to find out how long

5 the routes are, why isn't that some evidence?

6          MR. SCHARLAT:  I'm sorry, Your Honor?

7          THE COURT:  Why isn't that some evidence?

8          MR. SCHARLAT:  It could be. I think that --

9          THE COURT:  Isn't that enough for discovery

10 purposes?

11          MR. SCHARLAT:  I think you have to balance the

12 expense of it, Your Honor, the burdensomeness of it, the

13 worth of it considering he has all the records for all the

14 plaintiffs, and Jensey Jorge wasn't the only one that there

15 were punches for.  There are punches that cover the other

16 routes, as well, some of those routes, Your Honor, for the

17 non-plaintiffs, are routes that are discontinued. Some of

18 them, you know, are not relevant, and that decision has to

19 be made as well.

20          So what I'm trying to see if we can reach an

21 agreement on, and when I say -- also with my client, not

22 just with Mr. Bauer, is to say, look, we've got the

23 plaintiffs' records, they are what they are, we have other

24 forms of records which are going to be more informative than

25 these punch records, let's focus on that in terms of

efficiency, it's much more valuable information, the GPS and

the inventory registers, and as we go through the

depositions we'll see.  I'm not going to ambush Mr. Bauer,

and let's do this in a prudent way.  I don't think Mr. Bauer

even knows what he has yet because he just got all of the

plaintiffs' records.

THE COURT:  Okay.

MR. BAUER:  Your Honor, if I may, just one point?

THE COURT:  Yeah.

MR. BAUER:  Counsel had suggested that I will be

given alternative records that are more probative than the

non-plaintiff punch records, I just wanted to address that

briefly.  Counsel made a representation with regard to GPS

records, I have no GPS records, and I have no concrete

presentation from opposing counsel yet, although I was

promised one, as to, you know, what that entails, what I'd

be getting, who might be a relevant witness with respect to

this, so I have no confidence that I'm getting anything

there. In fact, the last affirmative representation that was

made was that there was never anything that would be kept

over time, it was just they had a GPS record so you could

look and see where a driver currently was. It seems like

that's now no longer the case, so I'm not comforted by the

representation that there are going to be GPS records

1

2  provided to me that will be more informative because I don't

3  know anything about them.

4          With respect to the invoice registers that counsel

5  mentioned, there's some problems with those. One is that's

6  basically a route list with suggested times the drivers tell

7  me. They said there is no real penalty associated with being

8  a little bit late, it takes, you know, it's sort of a

9  schedule, this is what we'd like you to do, you can't be

10 significantly late, what have you. The other thing is this,

11 there is a significant portion of the driver's day that

12 starts before the driver gets in the car, and certainly

13 starts before the driver makes the first stop. Some of these

14 guys are there two or more hours before they jump into the

15 van and then they start their route.

16          THE COURT:  What are they doing?

17          MR. BAUER:  I'm sorry?

18          THE COURT:  What are they doing, loading the

19 truck?

20          MR. BAUER:  They're boxing things, loading the

21 truck and, you know, and what have you.

22          THE COURT:  Okay.  And also after they get off,

23 you know, they bring the truck back, then, you know, they

24 don't, they're not necessarily immediately punching out,

25 they may be talking to the supervisor, they may be doing any

1
2  number of things, and so that's a piece of data. I think

3  it's, if you look at it facially it's misleading, you'll

4  say, oh, that suggests it should take six hours and we know,

5  we have punch records that suggest for that same route that

6  that's not the case. So I'm underwhelmed with this notion so

7  far that these alternative types of records --

8       THE COURT:  Well I'm not going to make any rulings

9  today, Mr. Bauer. If you want to write me a letter setting

10  forth your grievances, I'll get a response from Eli's Bread,

11  then I'll make a ruling.

12       MR. BAUER:  Okay.  And if it makes sense to the

13  Court, why don't counsel and continue to talk and so if --

14       THE COURT:  You should certainly continue to talk.

15       MR. BAUER:  If by the end of next week we don't

16  have a resolution, I'll write the Court.

17       THE COURT:  All right.

18       MR. SCHARLAT:  Thank you, Your Honor, that's fine

19  with us. I mean just to close it out, we had talked about as

20  recently as this morning about potentially working out some

21  sampling agreement so we don't have to go through

22  everything. I just want to make one comment about the

23  inventory registers, I think Mr. Bauer's point is well taken

24  except I believe, I'm almost certain, I'm almost certain,

25  that the testimony will be that the inventory registers take

1

2 into account time on either side for loading and arriving

3 and leaving.  So, you know, we'll get into that but I stand

4 by my statement that I believe there are more helpful

5 records than punch records that just on schedule.

6          THE COURT:  Okay.  So you're still looking.

7          MR. SCHARLAT:  We're still looking, still

8 gathering, as for the GPS records, there's two different

9 things.  There's older GPS records from an old system that

10 we don't have anymore. We told Mr. Bauer this morning that

11 there's a cost in trying to get whatever we can get, and

12 going forward with the new GPS records, which are at least

13 on their face valuable records, we're working on putting

14 them together. It is, Your Honor can imagine, and the GPS is

15 by route, so then you have to match it up to the driver for

16 that day, it's not just print them out and produce them,

17 we've got to understand them and, you know, at least know

18 exactly what we're producing. We're working on that, but

19 there's a difference between the old and the new GPS.

20          THE COURT:  What's the theory of your case, Mr.

21 Bauer, with regard to this, a route takes a certain amount

22 of time and you ought to be paid an hourly rate?

23          MR. BAUER:  Yes, Your Honor. The law provides that

24 to the extent that there is a daily rate payable to an

25 employee for a piece of work, a route in this instance, to

1

2 the extent that pursuant to that methodology an employee

3 works more than 40 hours in a given week, it's a half time

4 case, they're entitled to half time for, half of their

5 regular rate for each of the hours that they work in excess

6 of 40.   I don't think there's a dispute with respect to

7 that, and so the issue becomes how many hours did they work.

8 And if you get to the end of the week was it more than 40,

9 and if so, do the math, that's the entirety of the case. And

10 because they don't have consistent records --

11        THE COURT:  Well what if the worker is a slow

12 worker and if he's a more diligent employee, he could have

13 got it done --

14        MR. BAUER:  I take your point and I guess that

15 would be a proof issue. My understanding is that the remedy

16 for that, if somebody works too slowly, is you fire them,

17 just as if somebody took too long, you know, worked too many

18 hours in connection with a different sort of job, not a pay

19 per day, and they're working too much overtime, you can fire

20 them but you still have to pay the overtime to them before

21 you do. And so if they actually worked that amount of time,

22 well that's what they did.

23        Now, obviously if they went to see a girlfriend,

24 or to another job, or, you know, then that's a different

25 question, but --

```
 1                                              24
 2            THE COURT:  Well maybe they like to dawdle and
 3   talk to the bread manager at the restaurant, what are the
 4   new trends and, you know what I mean?
 5            MR. BAUER:  My belief, Your Honor --
 6            THE COURT:  Have you tried the new olive oil
 7   bread, you know, you're a selling person, you know?
 8            MR. BAUER:  I take your point and --
 9            THE COURT:  And instead of just rushing in, I'm in
10   a hurry, here's your bread, and they say there's your hat,
11   get going.
12            MR. BAUER:  Right, my position is they're entitled
13   to be paid for the hours they actually worked, whether they
14   went quickly or not.
15            THE COURT:  Is that right, even if you take longer
16   than you should?
17            MR. BAUER:  That's my understanding, yeah, and,
18   you know, obviously to an extent if there's, because, this
19   is not the setup that our clients put together, this is the
20   Eli's Bread setup, and we didn't write these laws. The laws
21   say if you work these hours you're entitled to be paid. And
22   so I understand at some point it becomes ridiculous. If
23   you're doing, you know, if you are on a frolicking detour
24   then I would think there is probably a pretty good argument
25   that the client shouldn't be paid, you know, the plaintiff
```

1
2  shouldn't be paid for that time.  But if you're slowly

3  working through or you're working not as fast as a

4  colleague, I don't think that matters under the law.

5            THE COURT:  Okay, well we'll see.  All right, the

6  offer is on the table, Mr. Bauer, if you can work this out,

7  fine, if you can't work it out, write me a letter, I'll get

8  a response and I'll rule on it.

9            MR. BAUER:  Thank you.

10            THE COURT:  Thank you very much.

11            MR. SCHARLAT:  Thank you, Your Honor.

12            THE COURT:  Do we need another date?

13            MR. BAUER:  I think that might make sense.

14            THE COURT:  You don't have your phone?

15            MR. SCHARLAT:  Of course not.

16            THE COURT:  You should get your Southern District

17  of New York counselor's card, do you know how to do that?

18            MR. SCHARLAT:  I do, Judge, I've had it in the

19  past.

20            THE COURT:  It's pretty simple, next time you're

21  down here you should do it.

22            MR. SCHARLAT:  Yes, Judge. Point well taken.

23            THE COURT:  Now that we have these new pavilions,

24  you know, they have separate entries for lawyers with

25  Southern District of New York cards.

26

1

2            MR. SCHARLAT:  Understood.

3            THE COURT:  It will make your entry into the

4   simpler, too.

5            MR. SCHARLAT:  Okay.

6            THE COURT:  Okay.  Marlon, give me a date,

7   sometime in June or July?

8            MR. SCHARLAT:  I think the end of June.

9            MR. BAUER:  I would agree.

10           THE CLERK:  Tuesday, June 28th at 3 p.m., Your

11  Honor.

12           THE COURT:  Yeah, okay.  Thank you very much.

13           MR. SCHARLAT:   Thank you.

14           MR. BAUER:  Thank you, Your Honor.

15           THE CLERK:  This Court stands adjourned.

16               (Whereupon the matter is adjourned.)

17

18

19

20

21

22

23

24

25

27

# C E R T I F I C A T E

         I, Carole Ludwig, certify that the foregoing

transcript of proceedings in the United States District

Court, Southern District of New York, Zvonko, et al., versus

Eli's Bread, Inc., et al., Docket #14cv8105, was prepared

using PC-based transcription software and is a true and

accurate record of the proceedings.

Signature_____

Date:   June 9, 2016