大成 DENTONS

Neil A. Capobianco
Partner

neil.capobianco@dentons.com
D   +1 212 398 5781

Dentons US LLP
1221 Avenue of the Americas
New York, NY  10020-1089
United States

大成  Salans FMC SNR Denton McKenna Long
dentons.com

June 16, 2016

**VIA ECF FILING & U.S. MAIL**

The Honorable Paul A. Crotty
United States District Judge
United States District Court
500 Pearl Street, Chambers 1350
New York, NY  10007

      Re:      **Zvonko v. Eli's Bread, Case No. 14-cv-08105**

Dear Judge Crotty:

      Defendants Eli's Bread, Inc. and Eli Zabar ("Eli's Bread" or "Defendants"), respectfully submit this response to the June 13, 2016 letter from Plaintiffs' counsel, Vincent Bauer (the "Letter"), and the accompanying Declaration of Zoric Zvonko dated June 8, 2016 (the "Zvonko Dec.").

**A.**      **Non-Plaintiff Punch Records**

      Defendants have produced thousands of pages of punch records for all seventeen plaintiffs going back to October 2008, as well as GPS records going back to 2012.  These records provide ample information for Mr. Bauer to determine the "duration of routes driven by Plaintiffs" that he seeks – and, notably, Mr. Bauer does not contend otherwise.  Defendants object to producing punch records for non-plaintiffs because the burden of production greatly outweighs any tangential, marginal relevance such records might have.

      Moreover, Mr. Bauer's contention that "drivers were not required to punch in or out" is false.  Punching in and out was a job requirement and is specifically outlined in the Employee Handbook that all drivers received when they were hired.  Admittedly, all but one of the drivers punched intermittently or not at all – most typically, punching in in the morning and not punching out at the end of their shifts.  As a result, the punch records provide an incomplete record of the start and end of the workday.  Combined with the GPS records, however, gaps in the Plaintiffs' punch records can be filled in.  Indeed, independent of any punch records, it appears that the best way to determine the length of the workday is from the GPS records, which show when the truck arrived at, and left, Eli's Bread's bakery on East 91st Street, as well as when the truck returned to the bakery or to the driver's home (for those drivers who took their trucks home).

      As counsel for Defendants, we have not examined punch records for the non-plaintiffs due to the burden and cost of retrieving and analyzing them.  Based on the punch records for the seventeen plaintiffs, however, we expect that they will be equally sparse.  They certainly will not

大成 DENTONS

Honorable Paul A. Crotty
June 16, 2016
Page 2

大成 Salans FMC SNR Denton McKenna Long
dentons.com

be direct evidence as to when any of the Plaintiffs' workdays started or ended. Mr. Bauer contends that non-plaintiff punch records may "reflect how long those [non-plaintiff] drivers took to drive certain routes also driven by one or more Plaintiffs." Eli's Bread has produced weekly schedules reflecting drivers' assigned routes, but those records have been redacted for non-plaintiffs. Thus, to cobble together the information the way Mr. Bauer proposes (instead of using GPS records he has in hand), non-plaintiff punch records and unredacted schedules would have to be produced **and** the non-plaintiff punch records will have to contain both a punch in and a punch out. Accordingly, the burden and cost of producing the non-plaintiff punch records greatly outweighs any marginal relevance they might have and this request should be denied. *Fed. R. Civ. P.* 26(b)(2)(C).

### B.   The Request To Examine The "Punch Record Database" Should Be Denied

The request to examine the punch record database is based on misrepresentations of the contents of (likely inadmissible)[1] statements made in the Zvonko Dec. First, Mr. Bauer claims that the examination is necessary to "determine whether changes have been made to the punch record database since the filing of the lawsuit." Letter, p.2. But, such a determination cannot be made based on the Zvonko Dec. because, although Zvonko claims that Milan Ratajac spoke to him in "early 2015," there is no indication in the Zvonko Dec. as to when the alleged "changes" Mr. Ratajac claims to have witnessed were made. Thus, without Mr. Ratajac's deposition, this determination cannot be made in any event.

Second, the Zvonko Dec. alleges that Plaintiff Zvonko was told by Mr. Ratajac that Ratajac (not Zvonko) supposedly "witnessed … Eli's Bread managers making changes **on the computer records** concerning driver's routes." Zvonko Dec. ¶ 3 (emphasis added). In contrast, the Letter incorrectly adds specificity not found in the Zvonko Dec. that a "manager observed … changing values **in the punch record database**." Letter, p. 2 (emphasis added). As described above, discovery in this case has confirmed that there are several types of often overlapping records "concerning driver's routes." Letter, p. 2. Nowhere in the Zvonko Dec. does Zvonko claim that he was told the changes were made to punch records specifically. Plaintiffs' counsel's representation that the "computer records" referred to in the Zvonko Dec. consist of the "punch record database" is without foundation and extends the sworn "facts" beyond their borders to harass and burden Defendants with unnecessary work and costs. The request should be denied for this reason as well. *Fed. R. Civ. P.* 26(b)(2)(C).[2]

### C.   Invoice Registers

Mr. Bauer's letter accurately quotes Defendants' position on the incredible burden and tangential relevance of the invoice registers. To be clear, an invoice register contains the **scheduled** time for the driver to deliver bread and pastry at each Eli's Bread customer on a specific day. The invoice register does not reveal **who** the driver is, what time the driver started

---

[1] There are several evidential defects in the Zvonko Dec., not the least of which is the absence of a sworn declaration under penalty or perjury as required by 28 U.S.C. § 1746 (unsworn declarations under penalty of perjury). The Zvonko Dec. should be rejected for this reason and Defendants reserve all rights in connection with the admissibility of the declaration and any statements therein.

[2] It should also be pointed out that Mr. Ratajac was a disgruntled employee at the time of the alleged statements attributed to Mr. Ratajac in the Zvonko Dec. The Company also knows that Mr. Ratajac made a habit of stirring the pot from a distance.

96371495

大成 DENTONS

Honorable Paul A. Crotty
June 16, 2016
Page 3

大成 Salans FMC SNR Denton McKenna Long
dentons.com

work at the Eli's Bread bakery getting the truck ready and loading, or what time the driver returned to the bakery (or home) at the end of the workday.

As an illustration of the incredible burden that this request would impose, Eli's Bread assembled (at our request) the invoice registers, the punch records, and the GPS records for **two weeks** for **one driver**. This exercise took our client **two (2) full hours**. It also revealed that the punch records (where they exist) and the GPS records are the best indicators as to when the workday began and ended. In contrast, the invoice registers listed a first delivery time anywhere from 30 minutes to 2 plus hours **after** the punch in or GPS arrival at the bakery. And, the invoice register listed a last delivery time up to a couple of hours **before** the driver returned to the bakery or home. In sum, the invoice registers do not reflect when the workday began or ended. Because Plaintiffs have records in hand to determine the "duration" of the drivers' workdays, and because the immense burden of retrieving the Plaintiffs' invoice registers vastly outweighs any marginal, tangential relevance that the invoice registers might have, Defendants should not be required to produce them and this request should be denied as well. *Fed. R. Civ. P.* 26(b)(2)(C).

We look forward to addressing these issues at our next court conference scheduled for 3 pm on Tuesday, June 28, 2016.

Very truly yours,

Richard I. Scharlat by NAC

Richard I. Scharlat
Neil A. Capobianco

96371495